

**SIGNED THIS 9th day of August, 2022**

*Rebecca B. Connelly*
_____
Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

**THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

IN RE:
**MORTON CRAIG SKAGGS,**                                    **Chapter 7**
**LAURIE LYNN SKAGGS,**
      **Debtors.**                                    **Case No. 17-50941**

**MORTON CRAIG SKAGGS,**
**LAURIE LYNN SKAGGS,**
      **Plaintiffs,**

**v.**

**STEPHEN W. GOOCH, ESQ.,**
**STEPHEN W. GOOCH, P.C.,**
      **Defendants.**

### MEMORANDUM OPINION

The parties in this matter contest whether post-discharge collection action subjects the offending creditor to sanctions for contempt of the bankruptcy discharge order. The answer depends on the application of *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), to the facts in this case.

### JURISDICTION

Morton Craig Skaggs and Laurie Lynn Skaggs filed bankruptcy in this Court. This Court has jurisdiction over their bankruptcy case by the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on

December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. Mr. Skaggs asks this Court to decide if the defendants violated the discharge injunction and if so whether the violation was sanctionable contempt of this Court's discharge order. Determining the extent of the discharge injunction and enforcing its terms touches the purpose of bankruptcy; it is axiomatic that a bankruptcy judge has authority to hear and decide this fundamental bankruptcy function. Indeed, the Bankruptcy Code contemplates such authority through sections 105(a) and 524(a)(2). *See Taggart*, 139 S. Ct. at 1801 ("In our view, these provisions authorize a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order.").

## BACKGROUND

*Procedural History*

Morton and Laurie Skaggs filed a joint chapter 7 petition on October 12, 2017. *See* ECF Doc. No. 1. Their case was converted to chapter 13 on April 11, 2018, and reconverted to chapter 7 on March 5, 2019. *See* ECF Doc. Nos. 19, 66. The Court entered an order granting a discharge to Mr. and Mrs. Skaggs on June 25, 2019, and then closed their bankruptcy case. *See* ECF Doc. Nos. 90, 91, 92.

On May 7, 2020, Mr. and Mrs. Skaggs moved to reopen their case. *See* ECF Doc. No. 93. They alleged post-discharge collection activity by a creditor on a discharged debt. The next day, the Court reopened the case. *See* ECF Doc. No. 94.

Counsel for the debtors initially filed a motion against Verizon Communications Inc. for an order of contempt for violation of the discharge order. *See* ECF Doc. No. 96. Subsequently, counsel amended the motion to rename the defendant as Airtouch Cellular, Inc. d/b/a/ Verizon.

*See* ECF Doc. No. 100.  Later, counsel dismissed the motion against Airtouch Cellular and filed a new motion against Stephen W. Gooch, Esq.  *See* ECF Doc. Nos. 111, 112, 118.  Finally, counsel amended the motion against Stephen W. Gooch, Esq. to add Stephen W. Gooch, P.C. ("Gooch law firm") as a defendant.  *See* ECF Doc. No. 129.  Stephen Gooch and Gooch law firm ("defendants") answered the motion.  *See* ECF Doc No. 132.

Mr. Skaggs seeks both compensatory and punitive damages for violations of the discharge injunction.  The defendants deny any violation of the discharge injunction.  Both parties ask this Court to rule as a matter of law in their respective favor.

The parties filed cross motions for summary judgment and a range of reply pleadings.  *See* ECF Doc. Nos. 140–45.  The Court held a hearing on these dispositive motions on April 7, 2022. *See* ECF Doc. No. 147.  The Court suggested the parties resolve the matter or narrow the issues for decision and therefore continued the hearing to allow them to do so.  *See* ECF Doc. No. 148. A week before the continued hearing, counsel for the defendants emailed the Court about the need to reschedule the in-person hearing due to his medical issues.  In light of counsel's medical issues and the parties' failure to narrow the issues or resolve the matter prior to the continued hearing, the Court took the motions for summary judgment under advisement in lieu of rescheduling the continued hearing.  *See* ECF Doc. No. 158.

*Material Facts*

On October 16, 2000, Virginia Cellular One, Inc. obtained judgment against Mr. Skaggs for $1,854.12 plus interest and costs (the "Cellular One judgment").  Ex. 2 to Pls.' Mot. for Summ. J., ECF Doc. No. 141-2.  The abstract of judgment was recorded in the land records of Rockingham Circuit Court on October 18, 2000.  *See* Pls.' Mot. for Summ. J. at 1, ECF Doc. No. 141; Defs.' Mot. for Summ. J. at 3–4, ECF Doc. No. 140.  After a series of transactions, the judgment debt

was assigned to the Gooch law firm in 2013. *See* Pls.' Mot. for Summ. J. at 2; Defs.' Mot. for Summ. J. at 4.

Mr. and Mrs. Skaggs filed a chapter 7 bankruptcy in October 2017. *See* ECF Doc. No. 1. On June 25, 2019, the Court entered an order discharging Mr. and Mrs. Skaggs of their debts pursuant to section 727 of the Bankruptcy Code. *See* ECF Doc. Nos. 90, 92. At the time, Mr. Skaggs did not own any real estate. *See* Mot. for Contempt ¶ 20, ECF Doc. No. 129; Defs.' Ans. to Mot. for Contempt ¶ 20, ECF Doc. No. 132.

After that, in September 2019, Mr. Skaggs inherited a 20% interest in real property in Rockingham County at 11857 Genoa Road, Fulks Run, Virginia ("Fulks Run property"). *See* Pls.' Mot. for Summ. J. at 3; Defs.' Mot. for Summ. J. at 4. Soon thereafter, this property was listed for sale, an offer accepted, and a closing scheduled. *See* Pls.' Mot. for Summ. J. at 3; Defs.' Mot. for Summ. J. at 9.

According to Mr. Skaggs, the Cellular One judgment was "stopping the sale and closing of" the Fulks Run property. *See* Defs.' Mot. for Summ. J. at 6; Ex. G to Defs.' Mot. for Summ. J. On March 11, 2020, Mr. Skaggs called the Gooch law firm regarding the Cellular One judgment and requested more information. *See* Defs.' Mot. for Summ. J. at 6. The following day, the Gooch law firm emailed Mr. Skaggs a payoff letter for the Cellular One judgment. *See* Defs.' Mot. for Summ. J. at 7; Ex. I to Defs.' Mot. for Summ. J. The payoff letter states the judgment amount and the payoff ($5,155.16) and includes an address where to send payment. Ex. I to Defs.' Mot. for Summ. J. What is more, the payoff letter clearly states "[t]his communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for the purpose of collecting that debt." *Id.* On March 12, 2020, Mr. Skaggs emailed the Gooch law firm

stating, "[the debt] is covered under my bankruptcy." Ex. J to Defs.' Mot. for Summ. J.; *see also*

Defs.' Ans. to Mot. for Contempt ¶¶ 13–14, ECF Doc. No. 132.

Four days later, on March 16, 2020, Mr. Skaggs emailed the Gooch law firm stating his

"bankruptcy attorney wants to know who the bill is going to be paid to [because Virginia Cellular

One, Inc.] is out of business." *See* Pls.' Mot. for Summ. J. at 4; Defs.' Mot. for Summ. J. at 7; Ex.

K to Defs.' Mot. for Summ. J. After emails back and forth, the Gooch law firm replied to Mr.

Skaggs that "Mr. Gooch is willing to accept $5,000 to settle the account in full and that payoff is

valid through 3-31-2020. In regards to your concern as to where the money will be sent to, Verizon

owns the VA Cellular accounts and they will be receiving the monies." Ex. K to Defs.' Mot. for

Summ. J.

After that, Mr. Skaggs's bankruptcy counsel met with the title agency and explained that

the Cellular One judgment never attached to the property. *See* Defs.' Mot. for Summ. J. at 9. On

March 31, 2020, the Fulks Run property sale closed as originally scheduled. *Id.*

The defendants admit that "the judgment at issue never attached to the interest of Mr.

Skaggs in the property he inherited on September 19, 2019–subsequent to the discharge order

entered on June 25, 2019." *See* Defs.' Mot. for Summ. J. at 8.

## ANALYSIS

*Summary Judgment*

The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a).[1] "Facts are 'material' when they might affect the outcome of the case, and a 'genuine

---

[1]      Federal Rule of Civil Procedure 56 is applicable to this proceeding pursuant to Federal Rule of Bankruptcy
Procedure 7056, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014(c).

issue'[2] exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering a motion for summary judgment, a court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  In the absence of a genuine issue of a material fact, a court should grant summary judgment against a party who "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

*Are material facts in dispute?*

Each party asks this Court to rule as a matter of law in their respective favor.  This circumstance would suggest that both parties concede no material facts are in dispute.  Yet, sadly, the parties would not stipulate to any of the facts, nor when questioned at hearing acknowledge to the Court which facts are in dispute and how those disputed facts make a difference to the questions for the Court to answer: did the creditor violate the discharge injunction, and if so, may the Court impose civil contempt sanctions against the creditor for contempt of the discharge order?

The parties do not point to any material contested facts.  They simply differ on whether the facts support the legal conclusion that (1) the discharge injunction was violated and (2) the defendants may be sanctioned for contempt of the discharge order.  Mr. Skaggs seeks judgment as

---

[2]    When the Fourth Circuit articulated its interpretation of "genuine issue" in *News & Observer Publishing Co. v. Raleigh-Durham Airport Authority*, 597 F.3d 570 (4th Cir. 2010), Rule 56(c) contained the summary judgment standard utilizing the phrase "genuine issue."  Later in 2010, the year the Fourth Circuit issued its opinion, an amendment to Rule 56 went into effect; the amendment moved the standard to subdivision (a) and changed "genuine issue" to "genuine dispute."  The amendment, however, did not alter the summary judgment standard.  According to the Advisory Committee Notes accompanying the 2010 amendments, the amended provision "carries forward the summary-judgment standard expressed in former subdivision (c)," and the word change did "not affect continuing development of the decisional law construing and applying these phrases."  Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

a matter of law that Stephen Gooch and the Gooch law firm violated the discharge injunction and may be sanctioned in the form of compensatory and punitive damages. Stephen Gooch and his law firm ask this Court to rule as a matter of law that neither of them may be found in contempt of the discharge order and so neither may be sanctioned or held liable for any damages.

*Section 524—Effect of Discharge*

Section 524(a)(1) provides that "[a] discharge . . . voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of" the Bankruptcy Code. 11 U.S.C. § 524(a)(1). Further, the issuance of a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." *Id.* § 524(a)(2).

On October 16, 2000, Virginia Cellular One, Inc. obtained judgment against Mr. Skaggs. Although the abstract of judgment was filed in the land records of Rockingham Circuit Court on October 18, 2000, Mr. Skaggs did not own any real property in Rockingham County to which a judgment lien could attach. On June 25, 2019, the Court entered an order of discharge pursuant to section 727 to Mr. Skaggs and his wife. At that time, no lien existed to secure the Cellular One judgment. By operation of section 524(a)(1), the discharge order voided the Cellular One judgment.

Because the discharge order voided the Cellular One judgment, there was no judgment lien that could attach when Mr. Skaggs inherited real property post-discharge. The defendants fail to provide any legal explanation for how the judgment was *not* voided by the discharge order. The defendants acknowledge that the debt was discharged at a time when Mr. Skaggs had no real estate.

They make much of the fact that a professional with the title agency involved with the real estate closing erroneously believed the debt was not discharged and that the lien did attach, and they make much of the fact that Mr. Skaggs initiated the communication with the defendants. *See* Defs.' Mot. for Summ. J. at 5–6. The defendants never showed how these facts make a difference to the legal question of whether the judgment was voided by the discharge order. They cite cases in which creditors holding a valid lien who communicate with a debtor regarding the lien are not violating the discharge injunction, but they fail to show how these cases apply here when the defendants had no lien. They conclude that they did not violate the discharge injunction because they had a "misunderstanding" about the status of the judgment, as if a mistaken belief that a lien exists renders it into existence. *See* Defs.' Mot. for Summ. J. at 15 ("The undisputed facts are clear—both parties were operating under an innocent, shared misunderstanding of fact . . . .").

The defendants argue that no violation of the discharge injunction occurred because, according to the defendants, they did not attempt to collect from Mr. Skaggs; they claim they were only attempting to enforce *in rem* rights based on the "judgment lien" they erroneously believed existed. That is, the defendants attempted to collect based on a nonexistent judgment lien. It would border on the absurd for this Court to conclude the defendants were simply enforcing *in rem* rights when no *in rem* rights existed. The defendants' heavy emphasis on the fact that some liens survive bankruptcy is also misplaced; the defendants seemingly ignore the fact that there was never a lien that could survive. Since there was no judgment lien, collection attempts under the guise of *in rem* were instead *in personam*. As such, the statutory language of section 524 leads to the inevitable conclusion that the defendants' actions to collect on the voided judgment, after Mr. Skaggs received his discharge order, violated the discharge injunction. There is no basis for this Court to rule otherwise, and so this Court concludes as a matter of law the defendants violated the

discharge injunction imposed by section 524(a)(2).[3]  Accordingly, the Court will consider whether the defendants may be held in civil contempt of the discharge order for violating the discharge injunction.

*Civil Contempt and* Taggart

The discharge injunction in section 524(a) lacks the statutory enforcement mechanism found in section 362(k), and so a bankruptcy court may rely on the broader doctrine of civil contempt through its equitable power under section 105(a) to give effect to a debtor's discharge. *See Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313 (11th Cir. 2015); *Roth v. Nationstar Mortg., LLC (In re Roth)*, 935 F.3d 1270, 1275 (11th Cir. 2019) ("This injunction is enforced through section 105 . . . ."). More specifically, section 105(a) and section 524(a)(2) of the Bankruptcy Code "authorize a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).[4]  That is, this Court "may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Id.* at 1799 (emphasis in original).  Stated differently, if there is in fact a fair ground of doubt as to whether the discharge injunction bars a creditor's conduct (i.e., if there is an objectively reasonable basis to conclude that the creditor's

---

[3]     As noted above, a bankruptcy court's issuance of a discharge order triggers statutory consequences, including releasing the debtor of personal liability, voiding judgments, and imposing an injunction against attempts to collect discharged debt. *See* 11 U.S.C. § 524(a). This statutory injunction, which occurs upon entry of a discharge order, is broad, powerful, and unambiguous. The terms of the order do not impose the injunction; federal bankruptcy law establishes the injunction, its broad terms, and sweeping applicability. Hence, there is no potential for ambiguity or lack of clarity as to the effect of the order since the order is governed by the statute. Neither ignorance nor willful blindness to the clear statutory effects of a bankruptcy discharge excuse a creditor from compliance, particularly one engaged in the practice of debt collection.

[4]     In his motion for summary judgment, Mr. Skaggs asks this Court to apply the legal standard for willful violations of the automatic stay. Because the motion before the Court concerns holding a party in civil contempt of the discharge order for violations of the discharge injunction, the Court will instead apply the legal standard set forth by the Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).

conduct might be lawful under the discharge order), this Court may not hold that creditor in civil contempt for violating the discharge order.

In *Taggart*, the Supreme Court "conclude[d] that neither a standard akin to strict liability nor a purely subjective standard is appropriate" in determining whether to hold a party in contempt of the discharge order for violation of the discharge injunction. *Id.* Mr. Skaggs urges this Court to adopt the standard used for willful violations of the automatic stay, which is in essence a strict liability standard. The defendants, on the other hand, assert what amounts to a subjective standard. The defendants argue that there was no sanctionable violation of the discharge injunction because the defendants *thought* there was an enforceable judgment lien that had attached to Mr. Skaggs's real property and because they *thought* they were simply enforcing *in rem* rights based on a lien that they *thought* had "survived" the discharge. Neither Mr. Skaggs's approach nor the defendants' argument is consistent with the Supreme Court's instruction.

Mr. Skaggs is mistaken that the discharge violation amounts to a strict liability offense, always subjecting the offender to sanctions and attorney's fees despite any defense. After all, that was the point of the Supreme Court's *Taggart* ruling. Likewise, the defendants' assessment is also mistaken. The defendants' subjective beliefs do not shield them from potential civil contempt when they violated the discharge injunction. *Id.* at 1802–03 (describing the subjective standard as "inconsistent with traditional civil contempt principles, under which parties cannot be insulated from a finding of civil contempt based on their subjective good faith").

As noted above, it is undisputed that Mr. Skaggs's discharge order voided the Cellular One judgment and that the defendants attempted to collect from Mr. Skaggs on the void judgment post-discharge. That the defendants thus violated the discharge injunction is unquestionable. To be held in contempt and sanctioned, their violation of the discharge injunction must be "based on an

objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *See id.* at 1802.

For the defendants to succeed in defeating this action seeking sanctions for contempt of the discharge order, they must point to an objectively reasonable understanding that the discharge granted pursuant to section 727 in this case did not void the Cellular One judgment by operation of section 524(a)(1). They have not done so. The defendants have not pointed to any facts suggesting Mr. Skaggs owned the real estate *before* he received his discharge in bankruptcy. The defendants do not describe any facts showing that the judgment was secured by a lien on the real estate *during* Mr. Skaggs's bankruptcy. The defendants have not identified any legal basis under which a court could conclude that the language of section 524(a)(1) would *not* void the judgment when Mr. Skaggs did not own real estate. The defendants simply have not identified any objective basis to conclude that the lien existed at the time they pursued collection. There is no doubt the underlying debt had been discharged and the judgment void when the defendants sought to collect. The defendants fail to cite any objective understanding that attempts to collect on a void judgment, or attempts to collect a void judgment on a discharged debt, do not violate the discharge injunction imposed by section 524(a)(2).

While the defendants' subjectively held belief that they did not violate the discharge injunction because they believed they had a valid judgment lien is unfortunate, the standard for holding a party in contempt of the discharge violation is not a purely subjective one. The defendants violated the discharge injunction based on an objectively unreasonable understanding of the legal effect of the discharge order to the facts of this case. Based on the undisputed facts here, the Court cannot find a fair ground of doubt that the attempts to collect on the void judgment

11

did not violate the discharge injunction. Accordingly, this Court holds that as a matter of law, the defendants may be held in civil contempt of the discharge order.

*Appropriate Sanctions*

Having determined that this Court may hold the defendants in contempt of the discharge order, the Court must determine appropriate sanctions. Generally, monetary sanctions fall into two categories: (1) they can compensate the complainant for losses caused by the contemptuous conduct; or (2) they can coerce the contemnor's compliance with a court order. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994). Put differently, "[d]amages awarded from civil contempt are . . . either coercive in an attempt to push a violating party into compliance with a court order, or remedial in an attempt to restore losses from a violation of a court order." *In re Cordova*, 635 B.R. 321, 340 (Bankr. N.D. Ill. 2021) (citing *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999)).

As for remedial damages, "[r]egardless of the nature of the award, the sanction must relate to or have been caused by a violation of a court order." *Id*. Damages that are coercive in nature may be aimed at "coercing the defendant to do what he had refused to do." *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911).

In fashioning appropriate sanctions in this case, the Court will focus on the remedial purpose of civil contempt. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance."). The defendants' collection of the void judgment and discharged debt continued until Mr. Skaggs's bankruptcy attorney intervened to stop the collection. All the same, the defendants ceased collection activity and have not engaged in additional violations of the discharge injunction.

Accordingly, this Court determines neither punitive damages nor damages intended to coerce the creditor to cease activity are appropriate. Furthermore, the Court may consider the defendants' good faith when the Court determines the appropriate remedial sanction. *See Taggart*, 139 S. Ct. at 1802 (noting "a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction").

With this backdrop in mind, the Court will set a hearing to consider appropriate remedial sanctions.

## CONCLUSION

The key facts are not contested. Mr. Skaggs owed a debt to Virginia Cellular One, Inc. The debt was reduced to judgment. The judgment was recorded. Mr. Skaggs owned no real estate and so the judgment debt was unsecured. Mr. Skaggs filed bankruptcy. Mr. Skaggs obtained a discharge in bankruptcy. At the time he obtained a discharge in bankruptcy, he still owned no real estate. The unsecured debt was discharged and the judgment voided. Months after his bankruptcy discharge, he inherited real estate. When he was in the process of selling the inherited real estate, he was advised by the title agency that the judgment would have to be paid prior to closing. He reached out to the defendants. The defendants provided Mr. Skaggs with a payoff statement for the Cellular One judgment debt and communicated an offer to release the judgment for a discount from the stated payoff. The debtors' bankruptcy lawyer intervened by instructing the title agency that the judgment had been voided and the debt discharged in bankruptcy. The closing went forward.

As a matter of law, the discharge order voided the judgment. No judgment lien existed at the time of the discharge and so the creditor had no *in rem* rights. When the defendants issued the payoff letter and offered a discounted payment for the judgment debt, they violated the discharge

injunction.  Because the defendants had no objectively reasonable basis on which to believe the judgment survived the bankruptcy discharge order or that their collection activity was otherwise lawful, the defendants may be held in contempt of the discharge order, as a matter of law.

For the reasons stated above, the Court grants Mr. Skaggs's motion for summary judgment and denies the defendants' motion for summary judgment.  The Court will issue an order consistent with the ruling in this Memorandum Opinion.

The Clerk is directed to send copies of this Memorandum Opinion to counsel for the parties.