

**SIGNED THIS 19th day of January, 2023**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN RE:<br>**MORTON CRAIG SKAGGS,**<br>**LAURIE LYNN SKAGGS,**<br>    Debtors. | Chapter 7<br><br>Case No. 17-50941 |
| **MORTON CRAIG SKAGGS,**<br>**LAURIE LYNN SKAGGS,**<br>    Plaintiffs,<br><br>v.<br><br>**STEPHEN W. GOOCH,**<br>**STEPHEN W. GOOCH, P.C.,**<br>    Defendants. | |

## DECISION AND ORDER

This matter is about a bankruptcy discharge violation and whether the defendants who violated the discharge should pay the debtors remedial damages.

Morton Craig Skaggs and Laurie Lynn Skaggs are the bankruptcy debtors and the plaintiffs in this case. Stephen W. Gooch and Stephen W. Gooch, P.C. ("Gooch law firm", together with Mr. Gooch, "defendants") are debt collectors and the defendants in this case. The defendants

violated the bankruptcy discharge injunction. The question for the Court is to what extent the defendants should pay damages.

*Damages for Violations of the Discharge Injunction*

As this Court has previously noted, a bankruptcy court's issuance of a discharge order triggers statutory consequences, including releasing the debtor of personal liability, voiding judgments (to the extent that such judgments are determinations of the personal liability of the debtor with respect to any discharged debt), and imposing an injunction against attempts to collect discharged debt. *See* 11 U.S.C. § 524(a). This statutory injunction, which occurs upon entry of a discharge order, is broad, powerful, and unambiguous. The terms of the order do not impose the injunction; federal bankruptcy law establishes the injunction, its broad terms, and sweeping applicability. As one court recently observed:

> Because the bankruptcy discharge is a court-ordered injunction in furtherance of a statutory injunction, the discharge violation need not succeed in coercing payment for sanctions to be imposed. . . . Congress intended the discharge injunction "to eliminate any doubt concerning the effect of the discharge as a total prohibition of debt collection efforts" and to ensure that "once a debt is discharged, the debtor will not be pressured in any way to repay it."

*Anderson v. Credit One Bank, N.A. (In re Anderson)*, 641 B.R. 1, 43 (Bankr. S.D.N.Y. 2022) (quoting the legislative history).

As this Court has already concluded, the defendants violated the bankruptcy discharge injunction. For the reasons stated in its memorandum opinion granting summary judgment, and to avoid any doubt, the Court now holds the defendants in contempt of the discharge order for violating Mr. Skaggs's discharge injunction. The Court imposes a remedial sanction upon the defendants in the amount of $25,000.00, representing the plaintiffs' attorney's fees in this matter. The sanction is explained in the following paragraphs.

*Punitive Damages*

Punitive damages are often awarded to coerce the contemnor's compliance with the court order. This Court previously ruled in this case that punitive damages are not necessary to coerce the defendants to cease collection activity. Consistent with that decision, the Court will not impose non-compensatory damages for this violation.

*Remedial Damages*

Remedial damages are compensatory for the loss and harm caused by the violation. If the injured party must litigate to be compensated for the harm from the violation, such litigation costs are parts of that harm to the extent the litigation was needed to recover the costs incurred to remedy the harm.

*Good Faith*

The defendants violated the discharge injunction. The defendants' good faith, if any, does not change that fact. Good faith may have a bearing when determining sanctions, which is simply another way of saying that a court will exercise discretion when determining an appropriate sanction for contempt of the discharge order, particularly in the absence of a specific statutory provision dictating the amount or type of sanction.[1]

The fact that a court may take good faith into account does not absolve the violators from responsibility for the harm. To the extent the contemnors caused harm, they must remedy it. If good faith is shown, it may affect the amount and type of sanction award. As a bankruptcy court has pointed out, "*Taggart* clarifies that the standard to find civil contempt is objective, but

---

[1] Courts enjoy broad discretion to determine an appropriate remedy for civil contempt. *See In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). "Although *Taggart v. Lorenzen* . . . clarified the standard for liability for breach of the bankruptcy discharge . . . it did not change the standard for determining remedies for such violations . . . [and] 'a party's good faith, even where it does not bar civil contempt, may help to determine the appropriate sanction.'" *Anderson*, 641 B.R. at 43–44 (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019)).

subjective good or bad faith may affect the size of the range of losses attributable to noncompliance with the injunction." *See In re LeGrand*, 612 B.R. 604, 613 (Bankr. E.D. Cal. 2020). That is, "[b]ad faith may widen the range of what is compensatory," and "[g]ood faith may narrow the range." *Id.* Obviously, for a court to consider good faith in this context, it is first necessary for good faith to be shown.

*Application*

　　*Relevant Facts*

Virginia Cellular One, Inc. obtained a judgment against Mr. Skaggs arising from a contract in 1998. *See* Joint Stipulation Ex. 5, ECF Doc. No. 169-5; Pls.' Ex. 3, ECF Doc. No. 168-3. The date of the judgment was October 16, 2000. *See* Joint Stipulation Ex. 6, ECF Doc. No. 169-6. The judgment was apparently docketed in the land records of Rockingham County Circuit Court on October 18, 2000, according to the defendants. *See* Defs.' Mot. for Summ. J. at 4, ECF Doc. No. 140. *But see* Joint Stipulation Ex. 6 (date of docketing appears as December 27, 2000, in handwritten notation).

At the time of the judgment, Mr. Skaggs owned no real estate and so the judgment debt was unsecured. Mr. Skaggs filed bankruptcy in 2017. Mr. Skaggs obtained a bankruptcy discharge in 2019. At the time he obtained a discharge in bankruptcy, he still owned no real estate. The unsecured debt was discharged, and the judgment was voided. Months after his bankruptcy discharge, he inherited real estate. When he was in the process of selling the inherited real estate, he was erroneously advised by the title agency that the judgment would have to be paid prior to closing.

Mr. Skaggs called the defendants in March 2020. The defendants provided Mr. Skaggs with a payoff statement for the judgment debt and communicated an offer to release the judgment

for a discount from the stated payoff. *See* Joint Stipulation Exs. 10, 12, ECF Doc. Nos. 169-10, -12. The first payoff statement acknowledged "[t]his communication is from a debt collector," "[t]his is an attempt to collect a debt," and "[a]ny information obtained will be used for the purpose of collecting that debt." Joint Stipulation Ex. 10, ECF Doc. No. 169-10. After that, Mr. Skaggs told the defendants in an email "this [debt] is covered under my bankruptcy." Joint Stipulation Ex. 11, ECF Doc. No. 169-11.

The defendants did not check PACER or any other source to determine if Mr. Skaggs had filed bankruptcy. *See* Trial Tr. at 77–78, 80, 92–94, ECF Doc. No. 176. The defendants did not check the land records to verify if Mr. Skaggs's bankruptcy preceded the date the debtor obtained real estate, nor to verify any other information regarding the 22-year-old contract debt or the nearly 20-year-old judgment. *See id.* at 79–82, 86. The defendants did not reach out to their client. *See id.* at 73, 78–80, 83, 89–90.

Later, Mr. Skaggs emailed the defendants stating his "bankruptcy attorney wants to know who the bill is going to be paid to [because Virginia Cellular One, Inc.] is out of business." *See* Joint Stipulation Ex. 12, ECF Doc. No. 169-12. After emails back and forth, the Gooch law firm replied to Mr. Skaggs that "Mr. Gooch is willing to accept $5,000 to settle the account in full and that payoff is valid through 3-31-2020." *See id.* The Gooch law firm further replied that "[i]n regards to your concern as to where the money will be sent to, Verizon owns the VA Cellular accounts and they will be receiving the monies." *Id*.

It was not until the debtors' bankruptcy lawyer intervened by instructing the title agency that the judgment had been voided and the debt discharged in bankruptcy that the closing was able to occur and the collection activity on the voided judgment stopped.

As a matter of law, the discharge order voided the judgment. No judgment lien existed at the time of the discharge, and so the creditor had no *in rem* rights. When the defendants issued the payoff letter and offered a discounted payment for the judgment debt, they violated the discharge injunction. Because the defendants had no objectively reasonable basis on which to believe the judgment survived the bankruptcy discharge order or that their collection activity was otherwise lawful, the defendants shall be held in contempt of the discharge order.

When the Court entered an order granting the plaintiffs' motion for summary judgment and denying the defendants' motion for summary judgment, the Court suggested the parties resolve the question of an appropriate remedial sanction and scheduled a conference to confer with them on the status. *See* ECF Doc. No. 162. At the status conference, the parties informed the Court that they had failed to resolve the matter of an appropriate remedial sanction. Accordingly, the Court continued the matter and scheduled an evidentiary hearing. *See* ECF Doc. Nos. 165, 166.

*Evidentiary Hearing*

On November 14, 2022, the Court held the evidentiary hearing. All objections to the exhibits and witness lists raised prior to the hearing were either decided by the Court or otherwise resolved at the hearing. The Court reserved ruling on one objection raised at the hearing and took the matter under advisement.

The Court will first turn to the ruling on the unresolved objection.

At the hearing, during cross-examination, the defendants' counsel used part of Mr. Skaggs's deposition to impeach his credibility on his testimony related to damages that he suffered from the violation. On redirect examination, the plaintiffs' counsel referred Mr. Skaggs to another part of his deposition about damages. The defendants' counsel objected on the ground that the plaintiffs' counsel was seeking to add evidence that he had not put on during his direct

examination. In response, the plaintiffs' counsel noted that he was attempting to rehabilitate the witness's credibility after the defendants' counsel impeached the witness's credibility on the same subject.

Federal Rule of Civil Procedure 32(a)(2) provides that "[a]ny party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence."[2] Fed. R. Civ. P. 32(a)(2). Rehabilitation of a witness's credibility is a purpose allowed by the Federal Rules of Evidence. *See, e.g.*, Fed. R. Evid. 801(d)(1)(B)(ii) (providing that a declarant's prior consistent testimony can be offered "to rehabilitate the declarant's credibility as a witness when attacked on another ground," and that such a prior consistent statement is not hearsay). In addition, Federal Rule of Civil Procedure 32(a)(6) provides that "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." Fed. R. Civ. P. 32(a)(6). Furthermore, "[t]he Rules of Evidence give trial courts discretion over 'the mode and order of interrogating witnesses and presenting evidence,' and do not bar the exercise of that discretion to allow inquiry into new subjects on redirect." *See United States v. Starling*, 220 F. App'x 238, 244 (4th Cir. 2007) (quoting Fed. R. Evid. 611(a)).

Here, after the defendants' counsel offered part of Mr. Skaggs's deposition into evidence, the plaintiffs' counsel sought to introduce another part of the same document. The subject of the part that the plaintiffs' counsel offered is the same as the subject of the part that the defendants' counsel offered and questioned Mr. Skaggs about—damages. The purpose of the plaintiffs' counsel's introduction was to rehabilitate Mr. Skaggs's credibility as a witness, after it was

---

[2] Federal Rule of Civil Procedure 32 is made applicable to bankruptcy contested matters by Federal Rules of Bankruptcy Procedure 7032 and 9014(c).

attacked by the defendants' counsel. The plaintiffs' counsel did not inquire into a new subject on redirect. All the same, if he did so, the Court may exercise its discretion to allow such an inquiry. The Court may squarely exercise its discretion to allow the plaintiffs' inquiry on the same subject (damages) by offering another part of the deposition that is relevant to damages on redirect.

Based on the above, the Court overrules the defendants' counsel's objection and admits the part of Mr. Skaggs's deposition that the plaintiffs' counsel offered into evidence. Accordingly, the Court takes both parts of the deposition into consideration in making its ruling on this matter.

Turning to the hearing, the Court heard testimony from Mr. Skaggs, Mr. Christopher Jones, Ms. Jerri Grizzle, and Mr. Gooch. The testimony of Ms. Grizzle and Mr. Gooch was relevant to the question of good faith.

*Ms. Grizzle's Testimony*

Ms. Grizzle is a non-attorney accounts manager of the Gooch law firm. Trial Tr. at 66–67. She testified that she received emails from Mr. Skaggs including one in which he stated that the debt was covered in his bankruptcy. *See id.* at 69. She admitted she did not cease collection action nor take any action in response to his informing her that he had filed bankruptcy. *See id.* at 71, 82–83. She acknowledged neither she nor anyone in the office checked the electronic bankruptcy records (PACER), adding that she receives multiples calls of people stating that they filed bankruptcy, and further that she "needed the information from the bankruptcy attorney," noting that the debtor failed to provide her a copy of his discharge order or the name and contact information of his bankruptcy attorney. *See id.* at 71, 78–82.

*Mr. Gooch's Testimony*

At the hearing, Mr. Gooch testified that he was familiar with the Fair Debt Collection Practices Act ("FDCPA"). *See id.* at 84. In response to questioning, he answered that he was

required by the FDCPA to send the letter offering the payoff amount (Joint Stipulation Exhibit 10) if the debtor requests a payoff. *See id.* at 85. He testified he had a duty to provide information about a debt even if the debtor has been discharged of the debt. *See id.* at 85–86. He failed to cite the provisions of the FDCPA he is relying upon, and he did not explain whether the letter offering the payoff was required if the debtor had disputed the debt. He stated he did not check with his client, nor did he check to see when the judgment was recorded and when the real estate was acquired. *See id.* at 89–94.

*Good Faith Not Shown*

Based on the evidence, the Court concludes that the defendants did not act in good faith. Even if the defendants' actions did not rise to the level compelling this Court to award punitive damages, all the same the actions were unjustified, unreasonable, and harmful.

When the defendants emailed Mr. Skaggs with the payoff letter for the Cellular One judgment on March 12, 2020, the defendants committed an intentional debt collection act in violation of the plaintiffs' discharge injunction. Sending the payoff letter was an intentional debt collection act because the essence of the payoff letter is demanding payment. The payoff letter provides instructions where the payment should be sent. The intent to collect the debt can hardly be in doubt when the payoff letter includes the clear statement of intent that "[t]his is an attempt to collect a debt."[3] The payoff letter does not contain any disclaimer reflecting that had Mr. Skaggs received a bankruptcy discharge, the defendants were not proceeding against him personally. It would be a foolish and obvious distortion of the letter to conclude the payoff letter was not requesting the payoff amount and was merely an informational statement.

---

[3] The defendants previously argued in its motion for summary judgment that they did not attempt to collect from Mr. Skaggs. Instead, they claimed they were only attempting to enforce *in rem* rights based on the "judgment lien" they erroneously believed existed. However, the Court has held that "[s]ince there was no judgment lien, collection attempts under the guise of *in rem* were instead *in personam*." *See* Mem. Op at 8, ECF Doc No. 161.

The defendants argue that the payoff letter was sent pursuant to Mr. Skaggs's request. Trial Tr. at 106. Ms. Grizzle and Mr. Skaggs testified that he made this request. Nevertheless, sending a payoff letter per a debtor's request does not eliminate or diminish the defendants' stated intent to collect the debt.

When the defendants emailed Mr. Skaggs with the settlement offer in the amount of $5,000.00 on March 16, 2020, after Mr. Skaggs informed them of his bankruptcy, they again committed an intentional debt collection act. Sending the settlement offer was an intentional debt collection act because the essence of the settlement offer is still, same as the payoff letter, a demand for payment, with the demanded amount reduced. In addition, the email containing the settlement offer provides instructions where the payment should be sent. Further, the email containing the settlement offer does not include any disclaimer reflecting that had Mr. Skaggs received his discharge, the defendants were not proceeding against him personally.

What is more, the defendants had actual notice of the plaintiffs' bankruptcy. On March 12, 2020, four days prior to sending the settlement offer, the defendants received an email from Mr. Skaggs notifying them "this is covered under my bankruptcy." They simply did not take it seriously. While Mr. Skaggs may not have provided the defendants with a copy of his bankruptcy discharge order, his statement certainly raised a doubt as to whether the judgment debt had survived a bankruptcy discharge. Clearly, it provided reason for the defendants to perform a bankruptcy search or consult with their client on Mr. Skaggs's account.

The defendants seem to assert the FDCPA as a shield to protect them from consequences for violating the discharge injunction. For example, Mr. Gooch testified that he was obligated to send the payoff letter per Mr. Skaggs's request because the FDCPA required him to do so. Mr. Gooch further testified that under the FDCPA, he was obligated to provide information about a

debt even if the debtor has received a bankruptcy discharge.  Mr. Gooch is correct that the FDCPA applies to his practice, but the FDCPA does not help him avoid sanctions in this case.  Mr. Gooch failed to show how his collection letters requesting payment of a debt that had been discharged are required under the FDCPA simply because the debtor inquired about the judgment, how sending a request for payment is "information about a debt," or more to the point, how the FDCPA excuses him from verifying the debt is legally collectible and insulates him from responsibility for attempting to collect a debt that has been discharged in bankruptcy.

The defendants repeatedly pointed out that Mr. Skaggs stated he would provide further information about the bankruptcy case to the defendants, but he failed to do so.  This fact does not alter the collection attorney's professional due diligence responsibility, nor render the collection actions permitted under the bankruptcy discharge injunction.

The defendants suggest the responsibility for the discharge violation falls upon the title company who originally told the debtor that the judgment appeared in the real estate records.  *See, e.g.*, Trial Tr. at 38.  The defendants' effort to shift responsibility to the title company does not work.  Mr. Gooch and the Gooch law firm disregarded Mr. Skaggs's communication informing them the debt was "covered" by his bankruptcy and decided that they were able to collect the debt without violating the law.  Another party's opinion in connection with this matter, correct or not, is no defense to their own errors.

The defendants did not, prior to sending the payoff letter, access the public records to check Mr. Skaggs's bankruptcy case, while they had the capability to do so.  Additionally, they did not communicate with their client on Mr. Skaggs's bankruptcy case.  Further, they did not do so even after they learned about Mr. Skaggs's bankruptcy case from his email sent on March 12, 2020.  They nevertheless sent the settlement offer on March 16, 2020.  The defendants engaged in

intentional collection action in violation of the discharge injunction. The violation continued until Mr. Skaggs's bankruptcy attorney intervened to stop the collection. Indeed, the defendants insisted Mr. Skaggs engage his bankruptcy attorney[4] in essence requiring the debtors to incur attorney's fees to enforce the discharge injunction by refusing to honor the discharge injunction until the debtors engaged the services of an attorney. Simply put, the violation was not promptly corrected. It was continuing and persistent.

When considering the extent, if any, to which good faith plays a role in fashioning sanctions, a court must first find good faith has been demonstrated. In this case, the Court has considered the record, the evidence, the arguments, and the applicable law. In the end, the Court concludes good faith was not shown. The defendants plainly have not shown good faith to justify narrowing the sanction award below a recovery for the amounts expended to enforce the discharge injunction and litigate to recover those amounts. The defendants violated the discharge injunction based on an unreasonable, subjective belief they could disregard the discharge order. They deliberately acted, and continued to act, after actual notice of the bankruptcy, without taking any steps to determine if they could legally collect the debt. They did not take steps to correct their discharge violation, nor mitigate the harm in a timely manner. Although the defendants refused to cease collection until the bankruptcy attorney became involved, they have litigated extensively to avoid compensating the debtors for such attorney's fees. The defendants deny responsibility insisting the title agency and the debtors are responsible for the defendants' breach of the law.

---

[4]   *See* Trial Tr. 71:7–13 ("He was stating that, you know, that there was a bankruptcy. And I actually advised him then that we needed the information from the bankruptcy attorney, that we do not have a copy, and that his attorney should have filed a lien avoidance. That he needed to contact his attorney if that was the case. And again he did not provide me the name of his attorney.").

*Conclusion*

At the hearing, the debtors' attorney asked this Court to award only $25,000.00 as a damage award for his attorney's fees expended to enforce the discharge violation. The defendants urged the Court to limit the award of the attorney's fees to $910.00, representing the fees the plaintiffs incurred prior to March 31, 2020, which was the date the property sale closed. The defendants argue that any attorney's fees after that date are not reasonable and necessary to remedy the violation. The argument itself is disingenuous. "It defies logic to suggest that a Plaintiff be required to incur a cost in order to enjoy the benefits of an injunction designed for his benefit, then be denied the right to be reimbursed those costs simply because that cost happens to be attorneys' fees." *Eastman v. Baker Recovery Servs. (In re Eastman)*, Adv. P. No. 08-5055-C, 2010 WL 5462469, at *3 (Bankr. W.D. Tex. Dec. 28, 2010). In effect, the defendants argue that it is reasonable for a bankruptcy debtor to incur greater costs and expenses to obtain reimbursement than the actual reimbursement, in effect rendering an award of compensatory damages meaningless. *See Anderson*, 641 B.R. at 44 (noting that "fees necessary to enforce injunction are a species of actual damages resulting from defendant's violation").

After a review of the entire evidentiary record and a consideration of both parties' arguments, the Court finds that the plaintiffs' request for $25,000.00 for attorney's fees is reasonable and necessary to recompense the debtors for the harm caused by the defendants. The attorney's time records show that the plaintiffs incurred attorney's fees in the amount of $25,675.00 from March 16, 2020, through June 1, 2022, in connection with the closing of the sale of the property and pursuing the motion for contempt to remedy the violation.[5] These amounts are

---

[5] This amount does not appear to include any time that the plaintiffs' attorney incurred to attend the evidentiary hearing on November 14, 2022, which lasted for three hours, or to travel to the hearing from counsel's office located in a city approximately thirty miles away from the courthouse.

supported by testimony of the debtor and the court docket in this case.  The Court finds the hourly rate is within (and indeed lower than) rates ordinarily charged by other experienced bankruptcy attorneys in this district.  The time records are detailed and reflect no duplication of services nor unnecessary or unrelated services.  The amount of time spent for each task is reasonable and not excessive.  It is clear from the statements made at the evidentiary hearing, as well as a review of the time records and the court's own docket, that the attorney's fees the plaintiffs incurred after the closing date were solely to remedy the violation.  Denying that part of the attorney's fees would leave the plaintiffs "who litigated to remedy a violation worse off than if the injunction had not been violated and would discourage vindication of the discharge." *See* 4 Collier on Bankruptcy ¶ 524.02 (citing *Duby v. United States (In re Duby)*, 451 B.R. 664 (B.A.P. 1st Cir. 2011)).  The Court will not limit the award of attorney's fees to only the amounts the plaintiffs incurred prior to the closing date for the sale of the property but will award amounts incurred to enforce the discharge injunction as well as incurred to litigate reimbursement of such amounts.

      Mr. Skaggs was harmed by the defendants' actions.  In addition to incurring attorney's fees to stop the collection, and extensive attorney's fees to recover those fees, he naturally incurred time away from his work plus transportation expenses to attend hearings and depositions.  He was obviously emotionally disturbed by the events.  Yet, the Court will not grant his request for $2,000.00 as additional damages.  To begin with, the Court finds emotional damages should not be awarded in the absence of objective corroborating evidence quantifying the damage amount.  Although Mr. Skaggs testified about his emotional distress (and displayed visible grief), Mr. Skaggs failed to introduce any documentary evidence corroborating his testimony.  On top of that, even if there is corroborating documentary evidence, the Fourth Circuit has disallowed emotional distress as an appropriate form of damages for civil contempt.  *See Burd v. Walters (In re Walters)*,

868 F.2d 665 (4th Cir. 1989) (noting that "no authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and we know of none"). As such, this Court is not willing to hold otherwise.

Likewise, the Court will not award damages for Mr. Skaggs's lost opportunity cost. Although Mr. Skaggs testified about his loss of time, and loss of potential earnings from his self-employment, he did not provide corroborating evidence. He asserted he had documentation corroborating his testimony but failed to introduce timely into evidence any documentation. Accordingly, the Court denies Mr. Skaggs's request for loss of time, potential earnings, and out-of-pocket expenses as speculative.

Based on the foregoing reasons and the entire evidentiary record, the Court grants the amount requested, and awards to Mr. Skaggs $25,000.00, representing the plaintiffs' attorney's fees in this matter, as remedial damages.

It is therefore **ORDERED** that the defendants shall pay $25,000.00, in collected funds payable to Roland Carlton, counsel for the debtors, within fourteen (14) days of the date of this order. Failure to do so shall subject the defendants to further sanctions or such penalty as the Court deems appropriate.

The Clerk is directed to send copies of this Order to the debtors and counsel for the parties.

**END OF ORDER**